# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EMERGING VISION, INC.,

    Appellant,

  v.                                                               Case No. 07-C-1048

JEAN M. SUNDSTROM,

    Appellee.

## ORDER

      Appellant Emerging Vision, Inc., appeals from an order of the United States Bankruptcy Court for the Eastern District of Wisconsin dismissing an adversary proceeding Emerging Vision commenced to deny Appellee and Debtor Jean M. Sundstrom's discharge under 11 U.S.C. § 727(a)(2)(A). Section 727(a)(2) provides in pertinent part that "[t]he court shall grant the debtor a discharge, unless [] the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." Emerging Vision argues that the bankruptcy court erred in concluding that Sundstrom did not transfer or conceal her property with an intent to hinder, delay or defraud her creditors, including Emerging Vision. Sundstrom, on the other hand, contends that the bankruptcy court's finding that she did not act with the requisite intent is not clearly erroneous and its order should be affirmed. I agree with Sundstrom and therefore affirm the bankruptcy court's order dismissing Emerging Vision's complaint.

**Factual and Procedural Background**

Emerging Vision is a retail optical company that operates and franchises a nationwide chain of retail optical stores, including the "Sterling Optical" franchise. Each of its stores offers a wide array of eye care services and products, including eye examinations, eyeglasses, eyeglass frames, contact lenses, and sunglasses. In 1996, Emerging Vision acquired Kindy Optical, a retail chain of stores engaged in essentially the same business. Two years earlier, Sundstrom had purchased a Kindy franchise in Oshkosh, Wisconsin, which she operated as a sole proprietorship. The purchase was financed with loan from Kindy for $161,000. When Emerging Vision acquired Kindy, Sundstrom became a Sterling Optical franchisee and entered into a ten-year franchise agreement. She also signed a new promissory note, under which she agreed to pay Emerging Vision the remaining balance she owed for her franchise – $155,049.

In 2001, Sundstrom stopped making the royalty payments and advertising fund contributions that were due under the Emerging Vision franchise agreement. Despite this fact, Emerging Vision did not terminate the franchise agreement, but instead attempted to work with her to bring her franchise account current. Finally, in 2004, Emerging Vision sued Sundstrom in the Supreme Court of New York for Nassau County to recover the outstanding balance on the Franchise Note she had signed. Sundstrom did not contest the suit, and on December 1, 2004, the court entered judgment against Sundstrom for the balance due on the Note – $105, 957.42.

Once she received notice of the Franchise Note judgment, Sundstrom "looked into filing for bankruptcy." On January 13, 2005, Sundstrom met with her corporate counsel, bankruptcy attorney, and accountant to discuss the possibility of filing for bankruptcy, and alternatively, incorporating a new company that would be called "Stellar Vision." On January 27, 2005, Emerging Vision

registered its judgment in Circuit Court for Winnebago County. That same day, Articles of Incorporation for Stellar Vision were also filed.

Stellar Vision is wholly owned and controlled by Sundstrom. On February 14, 2005, Sundstrom transferred the assets of her "Sterling Optical" franchise to Stellar Vision. Stellar Vision did not, however, assume the liabilities of the franchise. In exchange for the transfer of her ongoing and operating retail optical store, Sundstrom received 100 shares of Stellar Vision stock with a stated value of $1,000. Sundstrom admits that the Emerging Vision debt was part of the reason why she transferred her business to Stellar Vision. On March 17, 2005, Sundstrom caused Stellar Vision to obtain a loan from First National Bank Fox Valley for the purpose of purchasing a lens cutter. Due to the instant depreciation of this piece of equipment, the bank took a security interest in all of Stellar Vision's assets.

On September 27, 2005, Emerging Vision filed suit in the Supreme Court of New York for Nassau County, seeking payment of outstanding royalty and advertising fees, and an injunction barring Sundstrom's operation of Stellar Vision at her former franchise location in violation of the parties' non-compete agreement, which prohibited Sundstrom from operating a competing retail optical store within five miles of her Emerging Vision franchise. Two weeks later, on October 13, 2005, Sundstrom and her husband filed for bankruptcy protection under chapter 7 of the Bankruptcy Code, listing their liabilities to Emerging Vision as $304,026. In the Petition and Statement of Financial Affairs, the Sundstroms listed the value of the Stellar Vision stock at $0 because of First National's security interest in all of its assets, but made no mention of the business transfer, even though the Statement of Financial Affairs required a listing of all property transferred within one year before bankruptcy.

In June 2006, Emerging Vision filed an adversary complaint objecting to the Sundstrom's discharge, and alleging that the Sundstroms transferred the assets of the Sterling Optical franchise with the intent to hinder, delay, or defraud Emerging Vision in violation of Bankruptcy Code § 727(a)(2)(A). (Compl. ¶ 36.) The Sundstroms admitted to transferring their property within one year of bankruptcy without informing Emerging Vision of the transfer. (Mem. Decision Aug. 30, 2007, 4-5.) They argued, however, that they never acted with the intent to hinder, delay, or defraud a creditor, and actually converted exempt assets into non-exempt status by the transfer, thereby creating assets for their creditors. (*Id*. at 6.) The parties submitted the case to the Bankruptcy Court on the record, which included deposition transcripts, affidavits and other documents, and an earlier evidentiary hearing at which the Court had been able to observe the demeanor of the parties.

On August 30, 2007, Bankruptcy Judge Margaret Dee McGarity issued an order dismissing the adversary proceeding. The court found that there was no evidence John Sundstrom played any part in his wife's decisions regarding the franchise and its transfer, and granted him a discharge. The court also granted a discharge to Jean Sundstrom, concluding that she did not act with the intent to hinder, delay or defraud her creditors that § 727(a)(2)(A) required in order to deny a discharge. In so ruling, the Court concluded that Sundstrom's erroneous belief that her actions did not constitute a "transfer" was reasonable, and her belief that her franchise agreement had been terminated was credible. (Mem. Decision 9-12.) . The court also rejected Emerging Vision's claim that the Sundstroms made a false oath or account in violation of § 727(a)(4) by not disclosing the transfer on their Statement of Financial Affairs or to the trustee at the meeting of creditors.[1] The

---

[1] Although Emerging Vision did not plead this claim in its complaint, it later raised the issue in its argument to the bankruptcy court.

4

court credited the Sundstrom's testimony that they did not know they had engaged in a "transfer," noting that the transaction had in fact increased rather than decreased the assets available to their creditors, and even experienced bankruptcy counsel had not considered the transaction a transfer. (Mem. Decision 12.) Thus, the court concluded, the Sundstrom's did not knowingly misstate or fail to disclose the nature of the transfer with fraudulent intent under § 727(a)(4).

Emerging Vision has appealed only the portion of the bankruptcy court's decision holding that Jean Sundstrom did not transfer her property with the intent required to deny a discharge under § 727(a)(2)(A). Thus, the central issue in this appeal is whether Sundstrom transferred the assets of her franchise with the requisite intent to hinder, delay or defraud Emerging Vision. Sundstrom claims that the bankruptcy court correctly concluded she did not. Emerging Vision, however, claims that the bankruptcy court's decision should be reversed, noting that a creditor need not have been harmed by a debtor's actions to prevail on an objection to discharge, and arguing that the bankruptcy court failed to properly apply the indicia of fraud set forth in *Village of San Jose v. McWillaims*, 284 F.3d 785 (7th Cir. 2002). (Appellant's Br. 15, 23; Reply 8.) Emerging Vision also claims that the bankruptcy court impermissibly created an "ignorance of the law" defense to § 727(a)(2)(A) by finding that Sundstrom's belief in her legally incorrect interpretation of the Bankruptcy Code negated a finding that she acted with the intent to hinder, delay or defraud. (Appellant's Br. 22.)

**Analysis**

Federal district courts have jurisdiction to hear appeals of bankruptcy court orders under 28 U.S.C. §158(a). "A bankruptcy court's finding that a debtor acted with intent to hinder, delay, or defraud is a factual determination that may be reversed only if it is clearly erroneous." *Matter of*

5

*Smiley*, 864 F.2d 562, 566 (7th Cir. 1989). A finding of fact is clearly erroneous if it is without factual support or when the reviewing court, having considered all the evidence, is left with the definite and firm conviction that a mistake has been made. *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (quoting *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)). Under the "clearly erroneous" standard, the reviewing court may not reverse the finding of the trier of fact where it is plausible in light of the record viewed in its entirety, even if the reviewing court is convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. *Anderson*, 470 U.S. at 573-74. Therefore, where the evidence is such that two permissible conclusions as to the debtor's intent may rationally be drawn, the bankruptcy court's choice between them will not be viewed as clearly erroneous. *In re Krehl*, 86 F.3d 737, 744 (7th Cir. 1996). If a bankruptcy court's factual findings are silent or ambiguous as to an outcome-determinative factual question, the district court may not engage in its own fact-finding but, instead, must remand the case to the bankruptcy court for the necessary factual determination. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987). Legal conclusions, as well as mixed questions of law and fact, are reviewed de novo. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).

In this case, the bankruptcy court concluded that Sundstrom did not act with the intent to hinder, delay, or defraud Emerging Vision. Although its analysis is somewhat oblique, the findings of the bankruptcy court support this conclusion. Recognizing that a debtor's actual intent may be difficult to prove, the Court of Appeals for the Seventh Circuit has identified six factors a court should consider when evaluating whether a debtor has transferred property with the intent to defraud a creditor:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be

6

> charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002). The bankruptcy court recited these factors, and noted that where a creditor can show any of the factors is present, a presumption of wrongful intent is created, shifting the burden to the debtor to demonstrate a lack thereof. (Mem. Decision 9.) As Emerging Vision notes, the bankruptcy court did not make an explicit finding that the presumption of wrongful intent arose under the *McWilliams* factors in this case. Nonetheless, it is apparent, given the circumstances of the transfer at issue, that such a presumption did arise. Even Sundstrom acknowledges that the presumption arose, arguing only that it was rebutted. (Appellee's Br. 13.) Thus, while Emerging Vision first held the burden to demonstrate that Sundstrom acted with wrongful intent, this burden then shifted to Sundstrom to rebut, or negate, the presumption that she had such intent. The bankruptcy court implicitly acknowledged as much in its statement that Sundstrom's beliefs "negate the wrongful intent required." (Mem. Decision 12.)

The bankruptcy court's findings are sufficient to support its conclusion that in this case the presumption of wrongful intent was rebutted. The court concluded that Sundstrom did not believe that by incorporating her Stellar Vision business she was engaging in a transfer of assets. (Mem. Decision 11.) Although the court determined that Sundstrom's actions actually did constitute a transfer as a matter of law, it found that Sundstrom had reasonably and credibly believed otherwise. (*Id*. 12.) In so finding the court did not, as Emerging Vision claims, create an "ignorance of the law" defense to § 727(a)(2)(A). Instead, it simply drew the logical conclusion that if Sundstrom did not believe she was actually transferring her assets to a third party, it was unlikely she was acting

7

with the intent to defraud, hinder, or delay their recovery by Emerging Vision. It was not improper for the bankruptcy court to infer from the debtor's actual, albeit mistaken, understanding of the nature of the transaction that she lacked the requisite intent.

The bankruptcy court's conclusion that Sundstrom lacked such wrongful intent is further supported by its finding that the "assets subject to recovery were enhanced" by the transfer. (Mem. Decision 12.) The court noted that the assets transferred to Stellar Vision were carried on the books of Sterling Optical with a value of $4,500. (Dec. at 3.) Under Wisconsin law, debtors may claim an exemption for "tools of the trade" of up to $15,000. Thus, before the transfer, all of the tangible assets would have been exempt. After the transfer, however, Emerging Vision was free to execute on Sundstrom's Stellar Vision stock. That the transfer converted exempt assets into non-exempt assets and that all of the assets remained available to creditors supports the court's conclusion that Sundstrom did not undertake the transfer with intent to defraud, hinder, or delay her creditors.

Emerging Vision challenges the bankruptcy court's determination on several grounds. It first argues that it was actually harmed by the transfer because it could no longer execute on the business assets, but only on the stock of a corporation whose assets were subject to a newly-created security interest. (Reply 3, n. 3.) In addition, Emerging Vision contends that any "tools of the trade" exemption would not have covered all of the business assets (Reply 4, n. 4.), and that the "real value" in Sundstrom's franchise was its "intangible assets," such as goodwill.[2] (Reply 10.)

---

[2] Sundstrom denies that the business had any value as a going concern, noting that her own accountant testified that in her opinion the value of the business was zero. (Br. In Resp. at 8.) Her accountant's testimony is questionable, however, given the accountant's own concession that she is not an expert at business valuation, and the facts that the business had over $500,000 in gross sales for the year prior to its incorporation and over half of Stellar Vision's customers were former Sterling Optical customers. Nevertheless, Emerging Vision did not offer its own appraisal of the business.

But as the bankruptcy court noted, the same assets are still subject to recovery by the creditors. "Assets that had no record title were placed on the books of Stellar Vision, but in no way were they removed from the pool of assets that could be executed on for recovery by her creditors." (Mem. Dec. at 8.) Creditors could simply execute on the stock and liquidate the assets of the corporation. Whatever value the business had as a going concern it presumably still has since it has continued in operation. And while it may be true that First National may have a security interest in those same assets, no showing has been made that the value added to the corporation with the purchase of the lens cutting machine was less than the debt incurred by the corporation in that transaction. Based on the court's reasoning, I cannot say that its finding that Emerging Vision was not harmed is clearly erroneous.

Emerging Vision further argues, however, that by considering the fact that the transfer increased the assets subject to recovery, the bankruptcy court has erred as a matter of law because proof of harm to creditors is not an element of a cause of action under § 727(a)(2). (Reply 2-3) (citing *In re Smiley*, 864 F.2d 562, 569 (7th Cir. 1989)). "The exception to discharge in § 727(a)(2)(A) essentially 'consists of two components: an act . . . and an improper intent . . . ." *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002) (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d. Cir. 1993). By relying on the fact that no harm was shown to support its conclusion that Sundstrom did not act with the intent to hinder, delay or defraud, Emerging Vision contends that the bankruptcy court essentially added a third element, proof of harm, to a claim under § 727(a)(2)(A).

But there is nothing wrong with a bankruptcy court considering the value of the transferred property and the nature of the transfer itself in evaluating whether the transfer was made with fraudulent intent. *In re Dennis*, 330 F.3d 696, 702 (5th Cir.2003). After all, why would a debtor

9

place her discharge at risk and engage in fraud, or try to hinder or delay her creditors, if there is nothing to be gained in doing so? It is true that where a debtor has transferred assets with the intent to defraud, hinder, or delay her creditors, "[t]he statute does not provide that the creditors must have, in fact, been hindered, delayed or defrauded." *In re Smiley*, 864 F.2d at 569. But considering the value of the transferred property at the time it is transferred is not inconsistent with this principle. It is certainly not the same as requiring proof of harm as a third element to a claim under § 727(a)(2)(A). By way of example, suppose that shortly before filing for bankruptcy a debtor transferred valuable stock to a close relative for little or no consideration with the intention of defrauding her creditors. If the scheme is later discovered, the debtor's discharge would be properly denied under § 727(a)(2)(A), even if the stock has in the meantime become worthless. In other words, once a court has found that a debtor acted with wrongful intent, it need not consider the consequences of a debtor's actions to impose liability under the statute.

In this case, by contrast, the bankruptcy court concluded that Sundstrom did not possess wrongful intent. While a creditor seeking denial of a discharge under § 727(a)(2)(A) need not show actual harm to creditors, the fact that, from the standpoint of the debtor at the time of the transfer, no assets to which the creditors were otherwise entitled were being placed beyond their reach may be considered by the bankruptcy court in discerning the debtor's intent. In this case, the bankruptcy court found that with the advice of counsel, Sundstrom engaged in a transfer which converted assets from exempt to non-exempt status, thereby enhancing the assets subject to recovery by Emerging Vision. This finding supports the court's ultimate conclusion that Sundstrom did not engage in the transfer with the intention of hindering, delaying, or defrauding her creditor.

10

Emerging Vision argues that the case of *Watman v. Groman*, 458 F.3d 26, 33 (1st Cir. 2006) nonetheless compels a different conclusion. (Appellant's Br. 20.) In *Watman*, the First Circuit affirmed a bankruptcy court's holding that Mr. Watman violated § 727(a)(2) when he transferred the assets of his business, Children's Dental, to a newly incorporated business, Lowell Dentistry, in order to "get out from under" a judgment against himself and Children's Dental obtained by his former business partner. *Id.* at 35. Both Emerging Vision and the bankruptcy court in the instant case have noted similarities between Sundstrom's actions and those of Mr. Watman. (Appellant's Br. 20-21; Mem. Decision 10.) However, the bankruptcy court in this case found that unlike Mr. Watman, Sundstrom did not intend to frustrate her creditor. (Mem. Decision 10.) I may not reverse this finding unless it is clearly erroneous.

A bankruptcy court's choice between two permissible conclusions as to a debtor's intent will not be viewed as clearly erroneous upon review. *In re Krehl*, 86 F.3d 737, 744 (7th Cir. 1996). Thus, a certain set of facts may permit, but not compel, a finding of wrongful intent. Such was the case in *Watman*, where the bankruptcy court found that Mr. Watman's explanations for his actions were incredible, and that circumstantial evidence, such as a lack of consideration paid for the transfer, showed wrongful intent. The First Circuit merely held that these conclusions were "not clearly erroneous." *Watman*, 458 F.3d at 35. Therefore, even if, as Emerging Vision argues, the present case were factually indistinguishable from *Watman*, the First Circuit's decision would not compel a finding of wrongful intent by the bankruptcy court in the present case. In this case, the bankruptcy court found the circumstantial evidence of wrongful intent was rebutted by the debtor's credible testimony, which it had the opportunity to observe, and the surrounding circumstances of the transaction. I cannot say its conclusion is clearly erroneous.

11

Case 1:07-cv-01048-WCG    Filed 02/25/08    Page 11 of 12    Document 12

Because the findings of the bankruptcy court provide sufficient support for its conclusion that Sundstrom lacked the intent to hinder, delay or defraud Emerging Vision, the August 30, 2007 order of the bankruptcy court dismissing Emerging Vision's adversary proceeding is affirmed.

**SO ORDERED** this   25th   day of February, 2008.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge